UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **RUSSELL PAUL DESALVO** | **CIVIL ACTION** |
| **VERSUS** | **NO:    23-0032** |
| **KILOLO KIJAKAZI, ACTING COMMISSIONER OF THE SOCIAL SECURITY ADMINISTRATION** | **SECTION: "J" (4)** |

## REPORT AND RECOMMENDATION

This is an action for judicial review of a final decision of the Commissioner of Social Security, pursuant to Title 42 United States Code § 405(g).  The Commissioner denied Plaintiff Russell Paul Desalvo's ("Desalvo") claim filed for a period of special security income under the Title II of the Social Security Act, 42 U.S.C. § 23

The matter was referred to the undersigned United States Magistrate Judge pursuant to Title 28 U.S.C. § 636(b), for the submission of Proposed Findings and Recommendations.

**I.      Background**

Mr. Desalvo was a younger person from his alleged onset date through the date of the ALJ's decision. R. Doc. 8-1, Tr. 34; R. Doc. 9, Tr. 61, 66, 96-97, 116.[1] He has a 10th grade education in a special needs curriculum and has never been engaged in gainful employment.[2]   R. Doc. 8-1, Tr. 34; R. Doc. 9, Tr. 68, 276, 928, 1059.   Mr. Desalvo suffers from lumbar degenerative disc disease, cervical degenerative disc disease, post-traumatic stress disorder, intellectual disorder, depression, and obesity.   R. Doc. 9, Tr. 18 (Finding 2); R. Doc. 1 ¶ 4.

Plaintiff filed an application for SSI benefits on December 9, 2019, wherein he alleged

---

[1]  A "younger person" is classified as individuals under age 50. 20 C.F.R. § 416.963(c).
[2]  Past relevant work is defined as work that was performed within the last 15 years, that was substantial gainful activity, and that lasted long enough to be sufficiently learned. 20 C.F.R. § 416.960(a)(1),§ 416.965(a).

disability beginning on November 1, 2019.  R. Doc. 9, Tr. 251-57.  The claim was denied initially and on reconsideration.  *Id.* at 96-114 116-24.  A hearing was held before Administrative Law Judge ("ALJ") Henry Kramzyk on June 7, 2022, at which Mr. Desalvo, represented by counsel, and a vocational expert ("VE") appeared and testified.  *Id.* at 59-93.  On June 21, 2022, the ALJ issued an unfavorable decision.  *Id.* at 12-43.  A request for review was filed.  *Id.* at 250, 373-74.  However, the Appeals Council declined review.  *Id.* at 1-6.

On January 4, 2023, Desalvo filed a complaint in this Court seeking review of the ALJ's denial of his application for SSI benefits.  *See* R. Doc. 1.  Desalvo sets forth one error, namely that the ALJ failed to properly evaluate the opinion evidence.  R. Doc. 10.  Specifically, Desalvo contends that the ALJ erred when he failed to provide a discernible bridge from the evidence to his persuasiveness conclusions regarding the opinions authored by Drs. Culver and Halle.  *Id.* at 9.  Desalvo therefore contends that the opinion is not based upon substantial evidence and should be reversed.

The Commissioner contends that the ALJ properly followed the regulations and articulated good reasons for finding these opinions unpersuasive.  R. Doc. 11 at 4.  The Commissioner, therefore, contends that the ALJ's opinion is based upon substantial evidence.

**II.     Standard of Review**

The role of this Court on judicial review under Title 42 U.S.C. § 405(g) is limited to determining whether (1) the final decision is supported by substantial evidence and (2) whether the Commissioner applied the proper legal standards when evaluating the evidence.  *See Brown v. Apfel*, 192 F.3d 492, 496 (5th Cir. 1999).  The Court may not re-weigh the evidence, try issues *de novo*, or substitute its judgment for that of the Commissioner.  *Allen v. Schweiker*, 642 F.2d 799, 800 (5th Cir. 1981).  If supported by substantial evidence, the Commissioner's findings are

conclusive and must be affirmed. *Houston v. Sullivan*, 895 F.2d 1012, 1016 (5th Cir. 1989). However, an ALJ's failure to apply the correct legal test constitutes a ground for reversal. *Casias v. Secretary of Health & Human Servs.*, 933 F.2d 799, 801 (10th Cir. 1991).

Substantial evidence is more than a scintilla and less than a preponderance and is considered relevant such that a reasonable mind might accept it as adequate to support a conclusion. *Ripley v. Chater*, 67 F.3d, 552, 555 (5th Cir. 1995) (citing *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). It must do more than create a suspicion of the existence of the fact to be established, but no "substantial evidence" will be found when there is only a "conspicuous absence of credible choices" or "no contrary medical evidence." *Payne v. Weinberger*, 480 F.2d 1006, 1007 (5th Cir. 1973); *Hemphill v. Weinberger*, 483 F.2d 1137, 1138 (5th Cir. 1973). However, a single piece of evidence will not satisfy the substantiality test if the ALJ ignores, or fails to resolve, a conflict created by countervailing evidence. Evidence is not substantial if it is overwhelmed by other evidence, particularly evidence offered by treating physicians. *Franklin v. Soc. Sec. Admin.*, No. 12-2681, 2013 WL 5739078, at *2 (E.D. La. Oct. 22, 2013) (citing *Kent v. Schweiker*, 710 F.2d 110, 114 (3rd Cir. 1983)).

### III. Analysis

#### A. ALJ's Evaluation of the Opinion Evidence of Dr. Halle

Desalvo contends that the ALJ erred when he failed to provide a discernible bridge from the evidence to his persuasiveness conclusions regarding the opinions authored by Drs. Culver and Halle. The Commissioner contends that the ALJ applied the correct legal standards, and that substantial evidence supported his residual functional capacity determination. Specifically, Desalvo contends that the ALJ (1) mischaracterized Dr. Halle's opinion by limiting it to functional limitations when Dr. Halle also explained Deslavo's symptoms and referred to MRI findings to

support the opinion, and (2) failed to acknowledge abnormal findings on examination. R. Doc. 10 at 10. According to Desalvo, the ALJ's summary is not true to the tone or content of the record, and paints Deslavo's condition as less severe than the record reflects. Therefore, Desalvo contends that the ALJ's boilerplate statement about inconsistency was not supported by substantial evidence.

The Commissioner contends that the ALJ properly applied the revised regulations for evaluating medical opinion evidence consisting of the medical sources who treated and examined Desalvo. The Commissioner contends the ALJ's evaluation of the medical opinions comports with the relevant guidelines because the ALJ articulated how persuasive he found the opinions and specifically articulated how he came to the finding. R. Doc. 11 at 4.

Pursuant to the revised rules for evaluating medical opinions, the ALJ is no longer required to defer or give any specific evidentiary weight to any medical opinion or prior administrative finding. 20 C.F.R. § 404.1520c(a). Instead, the ALJ is required to consider all medical opinions and prior administrative medical findings using specific factors: (1) supportability; (2) consistency; (3) the physician's relationships with the claimant, which includes considering the length, purpose, and extent of the treatment relationship, the frequency of examinations, and the examining relationship; (4) the physician's specialization; and (5) other factors. 20 C.F.R. § 404.1520c(b). The most important factors are consistency and supportability. *Id.*; *Garcia v. Berryhill*, No. 17-CV-263, 2018 WL 1513688, at *2 (W.D. Tex. Mar. 27, 2018). Under the revised guidelines, the ALJ must articulate how persuasive he finds each of the opinions in the record based on the supportability and consistency factors. 20 C.F.R. § 404.1520c(b).

The supportability factor evaluates how "relevant the objective medical evidence and

supporting explanations presented by a medical source are to support his or her medical opinion(s)." 20 C.F.R. § 416.920c(c)(1). In other words, "supportability looks internally to the bases presented by the medical opinion itself." *Sharon H. v. Kijakazi*, No. 21-CV-167-H, 2022 WL 3951488, at *3 (N.D. Tex. Aug. 31, 2022). "In articulating how they considered the supportability factor, ALJs may note that the physician's own treatment notes do not support the physician's opinion, that the physician's opinion stems from a checklist, that the physician did not consider certain evidence, did not examine the claimant, or did or did not provide a detailed explanation for [their] opinion." *Starman v. Kijakazi*, No. 20-CV-00035-SRC, 2021 WL 4459729, at *4 (E.D. Mo. Sept. 29, 2021) (citations omitted) (collecting sources).

Consistency is defined as the extent to which a medical source's opinion is supported by relevant objective medical evidence. *Revisions to Rules Regarding the Evaluation of Medical Evidence*, 82 Fed. Reg. 5844-01, 5853 (Jan. 18, 2017). It is an external check that references evidence from other medical and nonmedical sources. 20 CFR § 404.1520c(c)(2). Consistency is an external inquiry that juxtaposes a medical opinion to other evidence in the record, including opinions of other medical professionals. *Sharon H.*, 2022 WL 3951488, at *3.

As for Dr. Halle, the ALJ found his opinion unpersuasive. In so doing, the ALJ noted that in January 2022, Dr. Halle found that Desalvo was capable of moderate stress work, that he is capable of less-than-sedentary work, and that Desalvo would need unscheduled breaks. R. Doc. 9, Tr. 33. The ALJ further noted that Dr. Halle found that Desalvo would be absent from work more than four days per month. *Id.*

The ALJ found that this checklist-style form appeared to have been completed as an accommodation to Desalvo and includes only conclusions regarding functional limitations with

5

little support, rationale, or objective findings for those conclusions. *Id.* The ALJ further determined that the findings were inconsistent with the longitudinal record, namely "the largely normal physical and mental examination findings" conducted by Desalvo's other providers as detailed earlier in the ALJ's opinion. *Id.*

The ALJ, in further explanation of the decision, referred to various parts of Desalvo's treatment records in support of consistency. For example, the ALJ referenced treatment notes from January 2022, which showed that Desalvo demonstrated a fair range of motion of the neck, and he displayed 5/5 strength. *Id.* He noted that in March 2022, Desalvo demonstrated normal strength. *Id.* The ALJ noted that Dr. Halle has not provided any objective support for his opinion that Desalvo would need unscheduled breaks. *Id.* The ALJ also noted that Dr. Halle relied on Desalvo's subjective report of symptoms and limitations rather than the objective evidence of records. *Id.* As a result, the ALJ concluded that Dr. Halle's opinion was unpersuasive.

Notably, the ALJ also supported his conclusion regarding the persuasiveness of Dr. Halle's opinion by referring back to the medical records which included the MRI that Desalvo mentions. *See* R. Doc. 9, Tr. 26. In fact, he noted that "the MRI of the lumbar spine revealed straightening of the thoracolumbar junction suspicious for muscle spasm/strain." *Id.* He noted the presence of the possibility of an annular tear anteriorly at L4-5 and posteriorly at L5-S1. *Id.* He mentioned that, while Desalvo complained of low back pain, he demonstrated normal motor strength and sensation. *Id.* The ALJ further noted that as to the lumbar degenerative disc disease, the record reasonably supports some functional limitations, but not to the extent Desalvo claimed. *Id.*

The ALJ concluded that the residual functional capacity is supported by the treatment notes and the longitudinal record. R. Doc. 9, Tr. 24. The ALJ found that the records largely had

normal physical and mental examination findings conducted by his other providers. In an earlier section of the opinion, the ALJ noted that Desalvo alleged that he was not able to work due to depression, neck and back pain, and difficulty walking, among other things. R. Doc. 9, Tr. 25. However, the record according to the ALJ showed that as to Desalvo's back, in January 2020 Desalvo displayed normal strength and normal sensation. *Id.* at 26. The ALJ pointed out that in October 2020, Deslavo did not appear in any acute distress, and despite having some tenderness, he displayed normal motor strength and his sensation was intact. *Id.* The ALJ further noted that radiographic imaging revealed only mild to moderate discogenic type changes at L5-6 and L6-S1. *Id.*

Further, the ALJ noted that in March 2021, Desalvo was evaluated at a neurology clinic and appeared in no acute distress. *Id.* The ALJ further noted that he demonstrated normal strength, demonstrated normal muscle tone, no atrophy, and a full range of motion. *Id.*

As to Desalvo's difficulty walking, the ALJ found that Desalvo refused a cane even though he reported falls. *Id.* The ALJ noted that while Deslavo claimed difficulty walking, during the agency consultative examination, he ambulated without an assistive device and was observed moving on the exam table without difficulty. *Id.* The ALJ further noted that he was able to squat, bend and stoop without difficulty, which Desalvo denied during the administrative hearing. *Id.* at 25-26. The ALJ further noted that during the consultative examination, Desalvo demonstrated normal gait, normal posture, and was able to heel and tiptoe walk, all without difficulty. *Id.* at 26.

Contrary to Desalvo's contention, the ALJ's conclusion that Dr. Halle's opinion was unpersuasive is supported by the record. The only record reference Dr. Halle made was as to the MRI. *See* R. Doc. 9, Tr. 1034-38. He failed to make any other references to the records to

support any of the other conclusions he reached.  In contrast, the ALJ made references to the record for the limitations claimed by Desalvo and showed how his claims did not correlate with the actual records.  Therefore, the Court finds that the ALJ's decision that Dr. Halle's opinion is not persuasive was supported by substantial evidence.

      **B.**     **ALJ's consideration of Dr. Culver's opinion**

Desalvo contends that the ALJ improperly concluded that Deslavo's performance on IQ testing and during his examination was inconsistent with other mental status examinations where Desalvo was reportedly displaying "average general intelligence."  R. Doc. 10 at 11-12.  Desalvo contends that the ALJ did not explain why his lay impression of the clinical evidence was superior to a qualified medical and failure to do so is error.  *Id.* at 12.  Desalvo also contends that his cognitive problems also produced limitations in pace, a distinct category of functioning from concentration or persistence.  *Id.* at 14.  Desalvo also contends that the ALJ erred in finding Dr. Culver's opinion not persuasive as to Desalvo's difficulty tolerating the social functioning and pace of a job.  *Id.*

In opposition, the Commissioner contends that the ALJ had good reasons for finding Dr. Culver's opinion unpersuasive.  R. Doc. 11 at 5.  One reason is that Dr. Culver's opinion was not supported by his own examination notes which showed that Deslavo was able to follow simple commands, had adequate vocabulary, displayed goal-directed speech, and was cooperative.  *Id.* (citing R. Doc. 9, Tr. 32-33). The Commissioner contends that Dr. Culver's opinion and IQ testing was inconsistent with other evidence showing Deslavo had a normal and logical thought process, normal attention and concentration, and average general intelligence.  *Id.*  Finally, the Commissioner contends that because the ALJ's decision is free of legal error and supported by

substantial evidence, the Court should reject Deslavo's claims and affirm the decision.

The ALJ considered the opinion of Dr. Lester Culver who stated that he has "doubts" that Desalvo could tolerate the social stress of a job, and that Desalvo's cognitive level would result in serious difficulty dealing with the pace of "almost all jobs." R. Doc. 9, Tr. 32. The ALJ further noted that Dr. Culver found that Desalvo has physical limitations and pain that interfere with his functioning. *Id.* The ALJ found Dr. Culver's opinion unpersuasive, noting that he is not a vocational expert and his statements and opinions on the pace required for almost all jobs is conclusory and lacks any support. *Id.* The ALJ found that Desalvo's performance on this one-time examination was not consistent with the mental status examination findings by his other providers. *Id.* at 32-33.

The ALJ found that Desalvo continuously displayed average general intelligence. *Id.* The ALJ noted that during the examination by Dr. Culver, Desalvo was able to sustain attention and persistence to watch videos on his phone for two hours. *Id.* at 33. The ALJ noted that Desalvo denied needing any help with dressing, bathing, grooming, and hygiene. *Id.* He found that Deslavo knew the number of pennies in a nickel, the numbers of nickels in a quarter, and the number of quarters in a dollar. *Id.*

The ALJ further noted that Deslavo was able to follow simple commands, his vocabulary was adequate, and he was not distracted. *Id.* at 33. The ALJ determined that Dr. Culver found that Desalvo was only mildly deficient in intellectual functioning, that he displayed full insight, and that his judgment was intact. *Id.* The ALJ noted that Deslavo demonstrated intact memory, normal attention, normal concentration, and average general intelligence. *Id.* The ALJ thereafter determined that Dr. Culver relied on the subjective report of symptoms and limitations provided

by Desalvo, rather than the objective evidence of record, and therefore found the opinion unpersuasive. *Id.*

The ALJ indicated that he reviewed the record as a whole, which includes Desalvo's reported activities of daily living, conservative/routine treatment modalities, the longitudinal medical record, the opinion evidence, and prior administrative medical findings. *Id.* The ALJ found that while Desalvo has impairments, he retains the ability to meet the requirements of work within the parameters of the above-noted residual functional capacity. *Id.*

The ALJ is ultimately responsible for determining a claimant's RFC. 20 C.F.R. § 404.1546(c); *Taylor v. Astrue*, 706 F.3d 600, 602-03 (5th Cir. 2012) (per curiam). Although the ALJ cannot completely disregard medical testimony in making an RFC determination, *see Ripley v. Chater*, 67 F.3d 552, 557 (5th Cir. 1995), the ALJ's decision need not mirror a medical opinion, *see Taylor*, 706 F.3d at 602-03; *Myers v. Saul*, No. SA-20-CV-00445-XR, 2021 WL 4025993, at *7 (W.D. Tex. Sept. 3, 2021). Rather, it is the ALJ's duty to interpret the medical evidence along with other relevant evidence to determine a claimant's capacity for work. *Taylor*, 706 F.3d at 603; *see Jones v. Kijakazi,* 625 F. Supp. 3d 549, 553 (S.D. Miss. Sept. 6, 2022.)

As Desalvo's cognitive level resulting in serious difficulty dealing with pace with "almost all jobs," the ALJ determined that Dr. Culver's opinion was conclusory, and he did not submit any support for this conclusion. A review of Dr. Culver's report supports this finding. *See* R. Doc. 9, Tr. 1056-62. Dr. Culver's report makes a general conclusion but fails to support it with any record evidence. *See id.* The Court, therefore, finds that the ALJ's determination that Dr. Culver's opinion as to Desalvo's pace is substantially supported by the record.

As to the ALJ's determination that Dr. Culver's statement that he doubted that Desalvo

could tolerate the social stress of a job, Desalvo contends that this finding is not supported by record. Specifically, Desalvo contends the ALJ's reliance on one instance of normal insight/judgment, normal attention, normal concentration, and average intelligence, has no bearing on his social functioning. R. Doc. 10 at 15. Instead, Desalvo contends that the record shows that he appeared strange, disinterested, paranoid around others, and persisted in isolation. *See id.*

Even if the record referenced by the ALJ does not specifically address social functioning, the ALJ who read the record accounted for limited social function in the RFC, noting that Desalvo required an occupation with only occasional contact with the public. *See* R. Doc. 9, Tr. 29. Further, the degree to which Dr. Culver's opinion was that Desalvo could not "tolerate the stress of a job," the ALJ's determination that Dr. Culver is not a vocational expert such that the opinion is not persuasive is based upon substantial evidence as the ALJ recognized some functional limitation but not to the degree espoused by Dr. Culver. The Court further notes that the record citations of DeSalvo social function supports the ALJ's functional limitation in social function.

Finally, Desalvo contends that the ALJ improperly found that Dr. Culver's opinion relied on Desalvo's subjective report of symptoms and limitations. Desalvo suggests that the ALJ not mentioning Dr. Culver's findings before making his findings constitutes a failure in evaluating the supportability factor. The ALJ's opinion details Dr. Culver's findings as well as the opinion of Desalvo's providers who found that he displayed full insight and intact judgment which was different from Dr. Culver's observations. R. Doc. 9, Tr. 32. He also referenced the results of Dr. Culver's examination where Desalvo notably could sustain attention and persistence enough to watch videos on his phone for two hours. *Id.* at 33. This observation supported the ALJ's finding that Dr. Culver's opinion was unpersuasive because it was a subjective statement rather than

11

objective medical evidence. *Id.* The Court finds that the ALJ's finding does not constitute error because it is based upon substantial evidence.

## IV.     Recommendation

**IT IS RECOMMENDED** that the decision of the Administrative Law Judge denying Russell Paul Desalvo's protectively filed application for Supplemental Security Income be **AFFIRMED.**

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation **within fourteen (14) days** after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. *See Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1430 (5th Cir. 1996).[3]

New Orleans, Louisiana, this 23rd day of October 2023.

**KAREN WELLS ROBY**
**UNITED STATES MAGISTRATE JUDGE**

---

[3] *Douglass* referenced the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend the period to fourteen days.